71789. LEWIS v. ATLANTA CASUALTY COMPANY et al.
(345 SE2d 858)

CARLEY, Judge.

Appellant-plaintiff was a sanitation worker in the employment of the City of Chickamauga (City). On March 22, 1984, appellant was standing on a platform at the rear of a City sanitation truck. The truck was hit by a vehicle driven by Mrs. Mary Nelms and appellant suffered a traumatic amputation of his leg as the result of the collision.

Appellant instituted the instant tort action to recover for his injuries. Appellant named, as defendants in his suit, Mrs. Nelms and appellee the Heil Company (Heil Co.). Mrs. Nelms subsequently died and her administratrix was substituted as a party-defendant in the action. Heil Co. is the manufacturer of the City's sanitation truck.

Appellant's complaint was also served upon two insurance companies, to wit: appellee Atlanta Casualty Company and Cherokee Insurance Company. Appellee Atlanta Casualty Company is appellant's own insurer and provides him with uninsured motorist coverage under his policy. After service of the complaint, Atlanta Casualty Company filed defensive pleadings in its own name. See OCGA § 33-7-11 (d). Cherokee Casualty Company was served in its purported capacity as the insurer of the City's sanitation truck. However, it filed no defensive pleadings in the case, has apparently made no appearance at any stage of the proceedings in the trial court, and is not a party to the instant appeal.

After discovery, both appellees Heil Co. and Atlanta Casualty Company filed motions for summary judgment. Hearings were conducted and the trial court granted summary judgment in favor of both appellees, leaving Mrs. Nelms' administratrix as the sole party-defendant in the proceedings. Appellant appeals from the grant of appellees' motions for summary judgment.

1. In granting summary judgment in favor of Atlanta Casualty Company, the trial court relied upon *State Farm Mut. Auto. Ins. Co. v. Hancock,* 164 Ga. App. 32 (295 SE2d 359) (1982). That case involved the interpretation of Ga. L. 1980, p. 1428, which amended the Uninsured Motorist Act. This court held: "The stated primary purpose of the 1980 amendment to the Act was 'to change the definition of "uninsured motor vehicle"' . . . [Cit.] The amended definition provides that in addition to carrying no liability insurance, an ' "uninsured motor vehicle" means a motor vehicle (of tortfeasor) . . . as to which there is . . . (b)odily injury liability insurance and property damage liability insurance with limits of coverage *which are less than the limits of the uninsured motorist coverage provided under the insured's* (injured party's) insurance policy. . . .' [OCGA § 33-7-11 (b) (1) (D) (ii)]. Recovery is limited to the amount of the difference between the limits of the coverage on the tortfeasor's automobile and that of 'the insured's motor vehicle policy.'" (Emphasis in original.) *State Farm Mut. Auto. Ins. Co. v. Hancock,* supra at 33. The undisputed evidence of record shows that Mrs. Nelms was afforded $10,000 in liability coverage under her insurance policy. Appellant was afforded $10,000 in uninsured motorist coverage under his policy with Atlanta Casualty Company. Since the limits of the two different coverages under the two policies are identical, the trial court apparently concluded that appellant would have no potential for recovery of any "difference" under the uninsured motorist provisions of his own policy.

Appellant asserts that this analysis denies him the benefit of "stacking" the respective limits of the uninsured motorist coverages provided in *all* of the "policies of which he is the beneficiary. [Cit.]"

*State Farm Mut. Auto. Ins. Co. v. Hancock,* supra at 34. The contention is that he was also an "insured" under a Cherokee Insurance Company policy which covered the City's truck. See *Hartford Accident &c. Co. v. Booker,* 140 Ga. App. 3 (230 SE2d 70) (1976). There is no question that our law "now allows an insured to 'stack' his multiple policies of uninsured motorist coverage where the tortfeasor is minimally insured." *State Farm Auto. Ins. Co. v. Hancock,* supra at 32. Moreover, if after "stacking" the limits of all of the available uninsured motorist coverages and setting off the limits of the available liability coverage, there remained any uninsured motorist coverage available to appellant, Atlanta Casualty Company would be initially liable up to its policy limits for that coverage. "The insurance company receiving a premium from [the injured party] will be responsible for compensating [him] under [his] policy." *Georgia Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 255 Ga. 166, 167 (336 SE2d 237) (1985). Atlanta Casualty Company asserts, however, that there is no evidence of record which would authorize a finding that the City's truck was covered under an existing policy of insurance issued by Cherokee Insurance Company or any other insurer. It further asserts that, even if such a policy should exist, there is no evidence as to the limits of the uninsured motorist coverage available thereunder.

As the movant for summary judgment, the burden was on Atlanta Casualty Company to "negative [appellant's] claim and show [he was] not entitled to recover under any theory of the case and this by evidence, which demands a finding to that effect. [Cits.]" *First of Ga. Ins. Co. v. Josey,* 129 Ga. App. 14, 15 (3a) (198 SE2d 381) (1973). Atlanta Casualty Company's own answer contains the assertion that appellant's "recovery would be against the uninsured motorist carrier for the City of Chickamauga. . . ." The answer also avers that the limits of appellant's policy with Atlanta Casualty Company "are less than those provided by the uninsured motorist carrier for the City of Chickamauga." If, as Atlanta Casualty Company's own answer alleges, appellant is afforded uninsured motorist coverage under a policy on the sanitation truck issued to his employer and if the limits of that coverage are greater than the $10,000 available under appellant's own policy, appellant would then have "stackable" uninsured motorist coverage limits in excess of $20,000. Setting off the $10,000 available under the liability coverage of Mrs. Nelms' policy from uninsured motorist coverage limits which are greater than $20,000 would leave an amount of uninsured coverage in excess of $10,000 available to appellant. If so, Atlanta Casualty Company would be primarily responsible for that coverage up to its $10,000 policy limits. *Georgia Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* supra. Atlanta Casualty Company's own pleadings raise the "stacking" theory. Its

evidence did not negate appellant's entitlement to a recovery under this theory. The trial court erred in granting summary judgment in favor of Atlanta Casualty Company.

2. With regard to the grant of summary judgment in favor of appellee Heil Co., the trial court ruled that appellant's "cause of action . . . is barred by *the statute of limitations.* See OCGA § 51-1-11." (Emphasis supplied.) Appellant does not assert that OCGA § 51-1-11 (b) (2) is *not* a statute of limitations. But see *Daniel v. American Optical Corp.*, 251 Ga. 166 (304 SE2d 383) (1983); *Smith, Miller & Patch v. Lorentzson*, 254 Ga. 111 (327 SE2d 221) (1985). Instead, it is appellant's contention that his claim against Heil Co. was erroneously construed by the trial court as predicated upon a strict liability theory. Appellant asserts that he relies upon the theory that the sanitation truck had been negligently designed and that his claim in negligence was timely brought within two years of the date of his injury. See OCGA § 9-3-33.

Assuming without deciding that appellant's complaint could be construed as stating a viable claim in negligence and that, under the circumstances, the claim was otherwise timely brought (see generally *Everhart v. Rich's, Inc.*, 229 Ga. 798 (2) (194 SE2d 425) (1972)), the following appears: The alleged "negligent" design was that the truck had "no lights, signals or any other type of a warning sign to notify operators of vehicles approaching from the front or rear of said truck that such truck when stopped was in the business of waste collection, and because of no signals of any description, the defendant Mary Purple Nelms was given no warning or signal of the size of such truck or its position on the highway. . . ." However, the undisputed evidence of record shows that the truck, as it was designed, manufactured and sold by Heil Co., came equipped with lighting fixtures and features which complied with all existing state and federal regulations. In the more than 10 years since its sale to the City, however, the truck had undergone changes. On March 22, 1984, certain of the lighting fixtures were broken and had not been repaired. Certain others had either been obscured by modifications made to the truck after its sale or had been totally replaced by different fixtures which were placed on new locations at the rear of the truck. *Talley v. City Tank Corp.*, 158 Ga. App. 130 (279 SE2d 264) (1981); *McNeely v. Harrison*, 138 Ga. App. 310 (226 SE2d 112) (1976). The collision between Mrs. Nelms' vehicle and the truck occurred in daylight and at a location where visibility was apparently not impeded. In Mrs. Nelms' deposition, she testified that she had actually seen the truck and had come to a stop behind it. According to Mrs. Nelms, she had then pulled into the lane of oncoming traffic in order to pass the truck and, when she swerved back upon seeing that a vehicle was approaching, she had struck the truck. Appellant does not cite and we have found

no evidence which would authorize a finding that the collision and appellant's injuries occurred in any other way. Appellant himself testified only that he had not seen or heard Mrs. Nelms' car before the collision and that he did not know whether or not she had initially stopped behind the truck. Under this evidentiary posture, Heil Co. sought summary judgment not only on its statute of limitations defense but also on the alternative ground that the alleged negligent design of its truck was not a proximate cause of appellant's injuries.

Even assuming that, under *Talley,* supra, and *McNeely,* supra, a genuine issue of fact remained with regard to the existence of a contemporaneous defect in the truck attributable to Heil Co.'s design, if Mrs. Nelms' actually saw the truck, stopped her vehicle, and *then* struck the truck while attempting to pass it, the presence or absence of any lighting fixture or warning feature on the rear of the truck would not be a causal factor in appellant's injuries. Under those circumstances, Mrs. Nelms did not hit the truck as the result of any lack of prior warning that it was stationary. "It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, *was not triggered by defendant's act,* and which was sufficient of itself to cause the injury. [Cit.]" (Emphasis supplied.) *Union Carbide Corp. v. Holton,* 136 Ga. App. 726, 729 (222 SE2d 105) (1975). " 'If an injury would have occurred notwithstanding alleged acts of negligence of the defendant, there could be no recovery,' in an action for negligence. [Cit.]" *Savannah East Side Corp. v. Robinson,* 102 Ga. App. 426, 429 (116 SE2d 613) (1960). "[W]here the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of [a] third person . . . , the defendant can not be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury." *Georgia Power Co. v. Kinard,* 47 Ga. App. 483, 486 (3) (170 SE 688) (1933).

Thus, even accepting appellant's contention that it was error to grant Heil Co.'s motion on its statute of limitations defense, the ruling was demanded on the alternative ground upon which summary judgment was sought. "Whether proceeding under a strict liability or a negligence theory, 'proximate cause' is a necessary element of appellant's case. [Cits.] Whether the truck in the instant case is alleged to be 'defective' or negligent in design, the proximate causal connection between that design and the [injury to appellant] has been negated by the evidence." *Talley v. City Tank Corp.,* supra at 134. " 'A correct decision of a trial court will not be reversed, regardless of the reasons given therefor.' [Cit.]" *Tony v. Pollard,* 248 Ga. 86, 88 (281 SE2d 557) (1981). The order granting summary judgment in favor of

Heil Co. is affirmed.

3. The grant of summary judgment to Atlanta Casualty Company is reversed. The grant of summary judgment to Heil Co. is affirmed.

*Judgment in favor of Atlanta Casualty Company reversed. Judgment in favor of Heil Company affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED APRIL 29, 1986 —
REHEARING DENIED MAY 23, 1986.

*Frank M. Gleason, John W. Davis, Jr.*, for appellant.

*J. Tracy Ward, Warren N. Coppedge, Dennis B. Watson, Douglas M. Campbell*, for appellees.